# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| MARCO MCILWAIN, | : |
| Plaintiff, | : |
| v. | : |
| | : CIV. NO. 5:17-CV-00363-MTT-MSH |
| DR EDWARD BURNSIDE, *et al.*, | : |
| Defendants. | : |
| _____ | : |

## ORDER

*Pro se* Plaintiff Marco McIlwain, who is presently incarcerated at the Georgia Diagnostic and Classification Prison ("GDCP") in Jackson, Georgia, has filed a Complaint seeking relief pursuant to 42 U.S.C. § 1983 (ECF No. 1). Plaintiff has also moved to proceed without prepayment of the Court's filing fee (ECF No. 2) and for appointed counsel (ECF No. 3). For the following reasons, Plaintiff's motion to proceed *in forma pauperis* ("IFP") is **GRANTED**, and Plaintiff's medical deliberate indifference claims against Defendants Burnside, Adair, and Uglee and retaliation claims against Defendants Adair and Uglee shall proceed for further factual development. Plaintiff's motion for counsel is **DENIED.**

### I. Motion to Proceed IFP

28 U.S.C. § 1915 allows the district courts to authorize the commencement of a civil action without prepayment of the normally-required fees upon a showing that the plaintiff is indigent and financially unable to pay the filing fee. A prisoner seeking to proceed IFP under this section must provide the district court with both (1) an affidavit in

support of his claim of indigence and (2) a certified copy of his prison "trust fund account statement (or institutional equivalent) for the 6-month period immediately preceding the filing of the complaint." § 1915(b).

In this case, Plaintiff's pauper's affidavit and trust account statement show that he is currently unable to prepay the Court's filing fee. Plaintiff's motion to proceed IFP (ECF No. 2) is thus **GRANTED** and Plaintiff will be assessed an initial partial filing fee of $0.00. Plaintiff, however, is still obligated to pay the full balance of the filing fee, in installments, as set forth in § 1915(b) and explained below. Accordingly, the **CLERK** is directed to forward a copy of this **ORDER** to the business manager of the facility in which Plaintiff is incarcerated so that withdrawals from his account may commence as payment towards the filing fee. The district court's filing fee is not refundable, regardless of the outcome of the case, and must therefore be paid in full even if the Plaintiff's Complaint (or any part thereof) is dismissed prior to service.

A. Directions to Plaintiff's Custodian

It is hereby **ORDERED** that the warden of the institution wherein Plaintiff is incarcerated, or the sheriff of any county wherein he is held in custody, and any successor custodians, each month cause to be remitted to the Clerk of this Court twenty percent (20%) of the preceding month's income credited to Plaintiff's account at said institution until the $350.00 filing fee has been paid in full. In accordance with provisions of the Prison Litigation Reform Act ("PLRA"), Plaintiff's custodian is hereby authorized to forward payments from the prisoner's account to the Clerk of Court each month until the filing fee is paid in full, provided the amount in the account exceeds $10.00. It is further

**ORDERED** that collection of monthly payments from Plaintiff's trust fund account shall continue until the entire $350.00 has been collected, notwithstanding the dismissal of Plaintiff's lawsuit or the granting of judgment against him prior to the collection of the full filing fee.

B.  Plaintiff's Obligations Upon Release

Pursuant to provisions of the PLRA, in the event Plaintiff is released from the custody of the State of Georgia or any county thereof, he shall remain obligated to pay any balance due on the filing fee in this proceeding until said amount has been paid in full; Plaintiff shall continue to remit monthly payments as required by the PLRA. Collection from Plaintiff of any balance due on the filing fee by any means permitted by law is hereby authorized in the event Plaintiff is released from custody and fails to remit payments. Plaintiff's Complaint is subject to dismissal if he has the ability to make monthly payments and fails to do so.

II.     **Motion for Appointed Counsel**

Plaintiff has also filed a motion for appointment of counsel (ECF No. 3). Under 28 U.S.C. § 1915(e)(1), the Court "may request an attorney to represent any person unable to afford counsel." There is, however, "no absolute constitutional right to the appointment of counsel" in a § 1983 lawsuit. *Poole v. Lambert*, 819 F.2d 1025, 1028 (11th Cir. 1987) (per curiam). Appointment of counsel is a privilege that is justified only by exceptional circumstances. *Lopez v. Reyes*, 692 F.2d 15, 17 (5th Cir. 1982). In deciding whether legal counsel should be provided, the Court considers, among other factors, the merits of Plaintiff's claims and the complexity of the issues presented. *Holt*

*v. Ford*, 862 F.2d 850, 853 (11th Cir. 1989) (en banc).

In this case, Plaintiff has filed a complaint on a standard § 1983 form. The Court is required to review the Complaint to determine whether Plaintiff's allegations state a colorable legal claim. This process is routine in *pro se* prisoner actions and is thus not an "exceptional circumstance" justifying appointment of counsel. The facts stated in Plaintiff's Complaint are not complicated, and the law governing Plaintiff's claims is neither novel nor complex. Therefore, Plaintiff's motion to appoint counsel (ECF No. 3) is accordingly **DENIED**. If, however, it becomes apparent at some point later in these proceedings that counsel should be appointed in this case, after due consideration of the complexity of the issues raised or their novelty, the Court will entertain a renewed motion.

### III. Preliminary Screening

#### A. Standard of Review

In accordance with the PLRA, the district courts are obligated to conduct a preliminary screening of every complaint filed by a prisoner who seeks redress from a government entity, official, or employee. *See* 28 U.S.C. § 1915A(a). Screening is also required under 28 U.S.C. § 1915(e) when the plaintiff is proceeding IFP. Both statutes apply in this case, and the standard of review is the same. When conducting preliminary screening, the Court must accept all factual allegations in the complaint as true. *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006); *Hughes v. Lott*, 350 F.3d 1157, 1159-60 (11th Cir. 2003). *Pro se* pleadings, like the one in this case, are "held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."

*Id.* (internal quotation marks omitted). Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A(b).

A claim is frivolous if it "lacks an arguable basis either in law or in fact." *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (internal quotation marks omitted). The Court may dismiss claims that are based on "indisputably meritless legal" theories and "claims whose factual contentions are clearly baseless." *Id.* (internal quotation marks omitted). A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[] a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555 (first alteration in original). In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Id.* at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To state a claim for relief under § 1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995).

5

If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal. *See Chappell v. Rich*, 340 F.3d 1279, 1282-84 (11th Cir. 2003).

B.  Factual Allegations

Plaintiff's claims arise from his treatment in the Special Management Unit ("SMU") at the GDCP. Compl. 3, ECF No. 1. Plaintiff contends that on August 11, 2016, he arrived at the SMU with serious injuries, including "5 stab wounds to the head," "several deep puncture wounds to the back," and a collapsed lung. Attach. 1 to Compl. 3, ECF No. 1-1. Defendant Burnside, the prison physician, told Plaintiff that he would be housed in an observation cell "due to the seriousness of the injuries." *Id.* Plaintiff inquired about pain medication and Defendant Burnside said Defendant Adair—a prison nurse—would provide him with pain medication. *Id.*

Approximately five days later, Defendants Burnside and Adair were making their rounds in the SMU. *Id.* Plaintiff again asked for pain medication because he had not yet received any, and he told them he "was hurting real bad and c[ould] barely breath[e]." *Id.* Plaintiff states that Defendants Burnside and Adair ignored him. *Id.*

Two days later, Plaintiff states his "back locked up" and "he couldn't move and was in excruciating pain." *Id.* Plaintiff was taken to medical and examined by another prison nurse who called Defendant Burnside and told him that Plaintiff was in "real bad pain and his right lung was diminishing." *Id.* at 4. Plaintiff was told that Defendant Burnside would see him in the morning. *Id.* Defendant Burnside did not see Plaintiff the next morning, even though Plaintiff's "pain was so bad that he couldn't get his food

6

tray." *Id.*

After another three days, Plaintiff notified Defendant Adair that he was still in "excruciating pain" and that his "wounds were bleeding through his shirt." *Id.* at 5. Plaintiff asked when Defendant Adair would "do dressing change and clean the wounds so they wouldn't get infected" and again requested pain medication. *Id.* Plaintiff alleges Defendant Adair again ignored him. *Id.*

After another week, Plaintiff's wounds again began to bleed "real bad" leaving him in "excruciating pain." *Id.* Defendant Uglee, a prison lieutenant, notified medical but was told "medical . . . wasn't coming to SMU." *Id.* Defendant Burnside saw Plaintiff the next day and prescribed Plaintiff pain medication, three weeks after Plaintiff first requested help. *Id.* at 6. Plaintiff continued to have issues with pain and notified Defendants Adair and Burnside about his symptoms from October 2016 until February 2017. *Id.* At some point, it appears Defendant Burnside stopped providing Plaintiff with pain medication or prescribed Plaintiff with medication that he knew was not effective. *See id.* at 7.

Plaintiff also alleges that Defendant Adair gave him the wrong medication, causing Plaintiff to become dizzy, vomit, and suffer from "real bad" stomach and chest pains for approximately twenty-one hours. *Id.* at 9-11. Plaintiff contends that when he informed Defendants Adair and Uglee that he had received the wrong medication, they laughed at him and refused to provide him with any treatment for his symptoms. *Id.* at 11. Plaintiff also alleges that Defendant Burnside refused to provide him with treatment "after gaining knowledge that Nurse Adair gave [Plaintiff] the wrong medication." *Id.* at

7

16.

Plaintiff additionally asserts that he filed numerous grievances regarding these incidents, and that on one occasion Defendant Uglee asked him to "drop the grievance," and when Plaintiff refused to do so Defendant Uglee refused to feed Plaintiff that day. *Id.* at 14. Plaintiff also appears to allege that Defendant Adair intentionally gave him the wrong medication "after gaining knowledge" that Plaintiff had filed grievances against her. *Id.* at 18.

Plaintiff contends that Defendants' actions have violated his constitutional rights. He seeks declaratory relief, injunctive relief, compensatory and punitive damages, a jury trial, and costs in this action, as well as "any additional relief this court deems just, proper, and equitable." *Id.* at 20-21.

    C.    <u>Plaintiff's Claims</u>

        *1.    Medical Treatment Claims*

The bulk of Plaintiff's claims are related to his allegations that Defendants failed to provide him with appropriate medical care. A prisoner who demonstrates that a prison official was deliberately indifferent to his serious medical needs can state a claim under the Eighth Amendment. *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (defining a serious medical need as one that has been diagnosed by a physician as requiring medical treatment); *see also Mann v. Taser Int'l*, 588 F.3d 1291, 1307 (11th Cir. 2009) (holding that a serious medical need may be "determined by whether a delay in treating the need worsens the condition"). Plaintiff's stab wounds and collapsed lung—and his accompanying "excruciating pain"—can certainly be considered serious medical needs.

8

*See Melton v. Abston*, 841 F.3d 1207, 1222 (11th Cir. 2016) ("Under our case law, a reasonable jury could find that [prisoner's] severe pain and suffering constituted a serious medical need."). In addition, Plaintiff's allegations that he suffered from severe chest pains, among other symptoms, after allegedly being given incorrect medication suggest that he had a serious medical need, at least for purposes of preliminary review. *See, e.g., Carter v. Broward Cnty. Sheriff Office*, No. 16-11649, 2017 WL 4387150, at *3 (11th Cir. Oct. 3, 2017) (per curiam) (concluding that prisoner had established a serious medical need when he did not receive prescribed blood pressure medication and "experienced chest pain and shortness of breath" as a result).

Plaintiff must also allege facts sufficient to show that each Defendant was deliberately indifferent to his serious medical needs. *Farrow*, 320 F.3d at 1243. "To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry." *Id*. A plaintiff must first "set forth evidence of an objectively serious medical need," and must also "prove that the prison official acted with an attitude of 'deliberate indifference' to that serious medical need." *Id.* To be deliberately indifferent to a prisoner's serious medical needs, prison officials must both "know of and then disregard an excessive risk to the prisoner." *Dunn v. Martin*, 178 F. App'x 876, 877 (11th Cir. 2006) (per curiam). "Mere negligence in diagnosing or treating a medical condition, or even medical malpractice, does not state an Eighth Amendment claim of medical mistreatment." *Id.*

Plaintiff alleges that on multiple occasions, he communicated his need for treatment and his symptoms—including "excruciating pain," blood soaking through his

9

shirt, "real bad" chest pains, and vomiting—to Defendants, who did not provide him with care. Plaintiff's allegations that Defendants ignored his requests for help shall proceed for further factual development. *See, e.g., Melton*, 841 F.3d at 1223 ("A defendant who unreasonably fails to respond or refuses to treat an inmate's need for medical care or one who delays necessary treatment without explanation or for non-medical reasons may . . . exhibit deliberate indifference.").

    2.    *Retaliation Claims*

Next, Plaintiff alleges that Defendant Uglee retaliated against him by failing to provide him with food when Plaintiff refused to drop his grievance, and he also appears to allege that Defendant Adair purposely gave him the wrong medication in retaliation for Plaintiff's complaints against her.[1] It is well established that an adverse action imposed in retaliation for a prisoner's exercise of a constitutionally protected right is actionable. *Wildberger v. Bracknell*, 869 F.2d 1467, 1468 (11th Cir. 1989) (per curiam). Generally speaking, to prove a retaliation claim an inmate needs to show that 1) he engaged in protected conduct, 2) that the prison official's retaliatory conduct adversely affected the protected conduct and 3) a causal connection between the protected conduct and the adverse action. *See, e.g., Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011). Construing Plaintiff's allegations liberally and taking them as true—as the Court must—Plaintiff's retaliation claims against Defendants Uglee and Adair must also proceed for

---

[1] To the extent Plaintiff is alleging that Defendant Adair negligently provided him with the incorrect medication, such allegations, standing alone, would fail to state a claim upon which relief may be granted. *See, e.g., Dunn*, 178 F. App'x at 877.

further factual development.

## IV. Conclusion

Based on the foregoing, Plaintiff's motion to proceed *in forma pauperis* (ECF No. 2) is **GRANTED**, and Plaintiff's medical deliberate indifference claims against Defendants Burnside, Adair, and Uglee and his retaliation claims against Defendants Adair and Uglee shall proceed for further factual development. Plaintiff's motion for appointed counsel (ECF No. 3) is **DENIED.**

### ORDER FOR SERVICE

Having found that Plaintiff has made colorable constitutional violation claims against Defendants Burnside, Adair, and Uglee, it is accordingly **ORDERED** that service be made on those Defendants and that they file an Answer, or such other response as may be appropriate under Rule 12, 28 U.S.C. § 1915, and the Prison Litigation Reform Act. Defendants are reminded of the duty to avoid unnecessary service expenses, and of the possible imposition of expenses for failure to waive service pursuant to Rule 4(d).

### DUTY TO ADVISE OF ADDRESS CHANGE

During the pendency of this action, all parties shall keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address. Failure to promptly advise the Clerk of a change of address may result in the dismissal of a party's pleadings.

### DUTY TO PROSECUTE ACTION

Plaintiff is also advised that he must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil

Procedure for failure to prosecute. Defendants are similarly advised that they are expected to diligently defend all allegations made against them and to file timely dispositive motions as hereinafter directed. This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

## FILING AND SERVICE OF MOTIONS, PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court. A party need not serve the opposing party by mail if the opposing party is represented by counsel. In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court. If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished.

## DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of the Defendant from whom discovery is sought by the Plaintiff. The Defendants shall not commence discovery until such time as an answer or dispositive motion has been filed. Once an answer or dispositive motion has been filed, the parties

are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure. The deposition of the Plaintiff, a state/county prisoner, may be taken at any time during the time period hereinafter set out provided prior arrangements are made with his custodian. **Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Rule 37 of the Federal Rules of Civil Procedure.**

IT IS HEREBY ORDERED that discovery (including depositions and the service of written discovery requests) shall be completed within 90 days of the date of filing of an answer or dispositive motion by the Defendants (whichever comes first) unless an extension is otherwise granted by the court upon a showing of good cause therefor or a protective order is sought by the defendant and granted by the court. This 90-day period shall run separately as to Plaintiff and Defendants beginning on the date of filing of Defendants' answer or dispositive motion (whichever comes first). The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall not be filed with the Clerk of Court. No party shall be required to respond to any discovery not directed to him/her or served upon him/her by the opposing counsel/party. The undersigned incorporates herein those parts of the **Local Rules** imposing the following limitations on discovery: except with written permission of the court first obtained, **interrogatories** may not exceed TWENTY-FIVE (25) to each party, **requests for production of documents and things** under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and **requests**

**for admissions** under Rule 36 of the Federal Rules of Civil Procedure may not exceed FIFTEEN (15) requests to each party. No party shall be required to respond to any such requests which exceed these limitations.

### REQUESTS FOR DISMISSAL AND/OR JUDGMENT

The Court shall not consider requests for dismissal of or judgment in this action, absent the filing of a motion therefor accompanied by a brief/memorandum of law citing supporting authorities. Dispositive motions should be filed at the earliest time possible, but in any event no later than one hundred - twenty (120) days from when the discovery period begins unless otherwise directed by the Court.

**SO ORDERED** this 12th day of February, 2018.

/s/ Stephen Hyles  
UNITED STATES MAGISTRATE JUDGE
